Bissell, J.,
deiivered the opinion of the court.
The plan pursued by the owner of the realty to apply it to the satisfaction of her debts was somewhat curious and unusual, but under the facts found by the court, we have no difficulty in upholding the judgment which establishes its validity. Prior to March, 1898, Sophia DeWitt was the owner of a lot in Durango. While she held title, she exe *197 cuted a trust deed on the premises to one Field, to secure an indebtedness amounting to $1,080, represented by a note payable April 1,1896, with interest. This deed was recorded. Later and in June, 1898, still holding title, she executed another trust deed to Sehutt as trustee, to secure $215 and interest to Barnes & Co. On the 7th of July following, she made still another trust deed to the same trustee Sehutt, to secure $411.65, with interest, which was also payable to the order of Barnes & Co. The trust deeds to Sehutt not only secured the indebtedness of Barnes & Co. but were given for the repayment of whatever might be advanced or expended by Barnes & Co. in the payment of taxes or any other liens or assessments on the property. In October, Mrs. DeWitt gave a power of attorney to her husband Jonathan S. which gave him broad powers to mortgage, lease, sell, or dispose of the property to pay debts or otherwise, and in general to do everything that the owner herself might do in the disposition of the property for any purpose. This letter of attorney was recorded and would have been ample and broad enough to give Jonathan full power to convey the property to Mrs. DeWitt’s creditors either to secure, or to pay her debts as he might see fit. On the 10th of November as an attorney in fact, he made a deed of the property to himself. On the 5th of December, none of the notes or trust deeds having been paid or released, he conveyed the property direct to Barnes & •Co. in payment of the notes which Barnes & Co. held. They took the title under an agreement to satisfy that paper, and to pay the interest and charges on the Field note. The title was thus transferred to pay the debts which Mrs. DeWitt owed Barnes & Co. but subject also to the lien of the Field trust deed which was an indebtedness due from her. The total indebtedness thus provided for amounted to about $2,000. The court found, and there was some evidence in the case to that point, although it is not very direct nor satisfactory, that the incumbrances amounted to about the full value of the property. The pivotal finding, which is entirely justified, was that the transfer was made to Barnes & Co. in good faith, *198 and without fraud or intent to hinder or delay other creditors, and to satisfy legitimate debts owing by the antecedent holder of the title, Mrs. DeWitt. Some time after, the appellants, Tennis & Co., sued out an attachment and levied it on the lot as the property of Mrs. DeWitt, who then had neither title nor color of record title. After this levy, Barnes & Co. intervened in the suit, set up these various transactions and sought to have the attachment dissolved and the levy removed as a cloud on their title.
On the facts heretofore stated, the court found with the intervenors and they had judgment accordingly which this appeal is prosecuted to reverse. The appellants assign a good many errors but we are unable to see that any of them are of sufficient importance or sufficiently well laid to warrant a reversal. Prior to the actual trial, the attachment plaintiffs filed a reply to the petition of intervention, and the court on the motion of the intervenors struck out part of it as not well pleaded, and of this action the appellants-complain. There are several answers to this contention; in the first place, part of the motion was properly granted because it was simply the pleading of a legal conclusion which raised no issue. It is barely possible that a portion of the second paragraph in the "reply was a good pleading, but if it was, the appellants were not harmed by the court’s order. The portion of the second paragraph which may possibly present a good issue, was an allegation that the transfer was without consideration, and made to hinder, delay and defraud creditors. As we look at it, this only attacked the conveyance to Jonathan S. DeWitt, which would raise an immaterial issue, because even though the conveyance was bad as to him, yet, if he afterwards transferred the title, whether under his-power of attorney, or as the holder of the legal title to pay Mrs. DeWitt’s debts, it was such an evident execution of the right he possessed under that power that the invalidity of the conveyance to him was of very slight consequence. If this presented an issue as to the good faith of, or the consideration for, the transfer, that matter was otherwise sufficiently *199 presented and the whole matter was made the subject of proof, treated as an issue, and on it, the courts found the facts adversely to the appellants. In this it was entirely justified. The error, therefore, if the court committed one, in granting the motion to strike out did not harm the appellants, and the judgment ought not to be disturbed because of it.
We do not intend to go through the assignments of error serially, but to indicate generally our views respecting the appellants’ contentions. We are quite ready to concede that if the title had stood in Jonathan DeWitt when the attachment was levied, the attaching creditors could have subjected the property to the payment of Mrs. DeWitt’s debts. No process was levied until after DeWitt had undertaken to convey the title to Barnes & Co. for a lawful purpose. This transaction was entirely legitimate and proper. It was done in good faith to pay honest and legitimate obligations, and it was a proper appropriation of the property to purposes which were legal and which might have been carried out without the slightest question under the power of attorney. We cannot see that any principle of law is violated, or that any wrong has been done these attaching creditors because he took the other course, and deeded it to himself and then transferred the title to his wife’s creditors. If he had the power to do it by virtue of his warrant of authority, the creditors who got the title without covin and in good faith ought to hold it free from the levies of subsequent attachments. Although we intimate no direct opinion about it, we do not wish to be understood as holding that on proper proceedings in equity on a bill filed for the purpose Tennis & Co. might not have investigated the conveyance, and if they could have shown that there was a wide difference between the value of the property conveyed and the debts they might have been entitled to some relief. We are not inclined to that opinion when the circumstances are as the court found them. The debts and the value of the property were about equal; the purpose was simply the application of the property to the payment of the debts and this Mrs. DeWitt might do, or her agent might do it, and if .the act was ac *200 complished although in this irregular way, we do not see how these other creditors can complain when they proceeded after the transfer had been made.
It is quite true there is no evidence of ratification but we do not deem that as material or vitally important because although she might disaffirm the conveyance made by the trustee to himself, yet, when he transferred the property to her creditors in the payment of her debts as he had a right to do under his power, we do not think it lay with the principal to disaffirm the act. Her silence and apparent acquiescence in the act would amount to an affirmance, and we do not believe that Tennis & Co. without some proof of fraud or of color-able transfer are in a position to assert any rights that Mrs. DeWitt might have under other circumstances. This is a sufficient statement of our conclusions in affirmance of the judgment, and believing it to be entirely right and to adequately and equitably settle the rights of the parties we shall sustain it.

Affirmed.